IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| KMART CORPORATION, | ) | Case No. 02 B 02474 |
| | ) | |
| Debtor. | ) | |
| KMART CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. 10 A 00293 |
| v. | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF REVENUE, | ) | |
| | ) | |
| Defendant. | ) | Hon. Susan Pierson Sonderby |

## MEMORANDUM OPINION

This cause comes to be heard on the cross-motions for summary judgment filed by the plaintiff, Kmart Corporation ("Kmart") and the defendant, the Illinois Department of Revenue ("IDR") with respect to Kmart's adversary complaint seeking a declaration of the state tax effects under section 346 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") of Kmart's plan of reorganization.[1] For the reasons stated, the court will continue the motions for a status hearing to afford the parties an opportunity to address the issue of whether this court has subject-matter jurisdiction over this proceeding.

**Background**

The facts are undisputed. Kmart is a Michigan corporation that, since exiting bankruptcy, has moved its chief place of business to Illinois. Kmart and 37 affiliates filed voluntary petitions for

---

[1] The parties agree that the version of section 346 in existence prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 ("BAPCPA") applies to this proceeding.

reorganization under chapter 11 of the Bankruptcy Code on January 22, 2002. On April 22, 2003, this court entered an order confirming the First Amended Joint Plan of Reorganization of Kmart Corporation and its Affiliated Debtors and Debtors-in-Possession, as Modified (the "Plan"), which became effective on May 6, 2003 (the "Confirmation Order"). Subsequent to confirmation, Kmart continues to operate its retail business in the State of Illinois and continues to be subject to various Illinois tax revenue statutes, including the Illinois Income Tax Act.

Both prior to and during bankruptcy, Kmart suffered substantial operating losses which accumulated for federal and Illinois tax purposes and are referred to as "net operating losses" ("NOLs"). Prior to adjustments pursuant to section 346 of the Bankruptcy Code, Kmart had, as of the effective date of the Plan, more than $228 million in NOLs available to be carried forward in order to be applied to positive income during profitable years.

By virtue of the entry of the Confirmation Order, Kmart was discharged of approximately $4.8 billion of debt. For federal income tax purposes, Kmart reduced its federal tax attributes and basis in property to reflect the full discharged amount. Of the total debt discharged, approximately $2.2 billion represented the principal amount of borrowed funds evidenced by promissory notes (the "Borrowed Debt"), for which Kmart did not claim a deduction on its Illinois or federal income tax returns. Claims based on the Borrowed Debt were placed in Class 4 of the Plan. The holders of allowed Class 4 claims received common shares in the reorganized Kmart in satisfaction of their Borrowed Debt claims.

Kmart has a claim against the IDR for a refund of prepetition income taxes. Kmart and the IDR have reached a consensus on the amount of the refund but cannot agree on the proper application of the stock for debt treatment in Class 4 to the NOLs that may be applied to income.

Specifically, they disagree on whether the governing version of section 346 of the Bankruptcy Code requires that cancelled Borrowed Debt be excluded from total cancelled debt that is applied to reduce NOLs. Kmart contends that the cancelled Borrowed Debt should not be included in the cancelled debt that reduces its NOLs. If Kmart is correct, more of the NOLs can be used to reduce its income tax liability to Illinois. In its cross-motion for summary judgment, the IDR asserts the opposite: the cancelled Borrowed Debt should be included in the cancelled debt that reduces the NOLs. If the IDR is correct, the amount of the NOLs is smaller and consequently Kmart's income tax liability is greater.

Kmart contends that its position is mandated by the plain language of section 346. The IDR argues that the statute's language is not plain, and even if it were, the statute should not be enforced because to do so would lead to an absurd result.

Since at least 2007, Kmart and the IDR have engaged in a series of negotiations to resolve this and other tax issues between them. As part of these discussions, Kmart requested IDR's concurrence in its method of accounting for the cancellation of Borrowed Debt upon confirmation of the Plan. The IDR has not agreed, giving rise to an actual controversy.

On March 1, 2010, Kmart filed an adversary complaint seeking to resolve the controversy with this court's entry of a judgment declaring that Kmart's method of accounting for cancellation of debt income for Illinois income tax purposes is appropriate under the provisions of section 346 of the Bankruptcy Code (the "Complaint"). In its summary judgment motion, Kmart seeks a declaration as a matter of law that it is not required to reduce its NOLs by the amount of the Borrowed Debt settled under the Plan. The IDR filed a cross-motion for summary judgment arguing otherwise.

**Jurisdiction**

Kmart and the IDR stipulate that this court has jurisdiction over this proceeding which was brought after the entry of the Confirmation Order. Pursuant to the Confirmation Order, the court retained jurisdiction over "all matters arising out of, and related to, the Chapter 11 cases and the Plan, including those matters set forth in Article XIV of the Plan," which provided for the retention of, *inter alia*, "matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code." (Confirmation Order at Docket No. 10871 p. 56[2]; Plan at Docket No. 8927 pp. 57-58).

Subject matter jurisdiction, however, "can never be stipulated," Floyd v. Thompson, 227 F.3d 1029, 1035 (7th Cir. 2000), and this court cannot via the plan retention provision "write its own jurisdictional ticket" but must "act within the confines of constitutional as well as statutory limits on jurisdiction." In the Matter of FedPak Systems, Inc., 80 F.3d 207, 215 (7th Cir. 1996). So, despite the parties' stipulation and even though the Confirmation Order retained jurisdiction over certain tax matters, the court must still analyze whether it in fact has jurisdiction over this proceeding.

Section 1334(b) of title 28 of the United States Code is the statutory source of bankruptcy jurisdiction and is thus the starting point for the bankruptcy judge to ascertain whether jurisdiction exists. In re Cary Metal Products, Inc., 152 B.R. 927, 930 (Bankr. N.D. Ill. 1993) (*citing* In re Spaulding & Co., 131 B.R. 84 (N.D. Ill. 1990)).

Section 1334(b) gives district courts original but not exclusive jurisdiction over all civil

---

[2] Docket references are to the entries on the docket maintained for the Kmart bankruptcy case.

proceedings arising under title 11 or arising in or related to cases under title 11. Id. The Seventh Circuit Court of Appeals explains that,

> [b]ankruptcy judges "constitute a unit of the district court," 28 U.S.C. § 151, and the district court may refer to them "any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a). The jurisdiction of the bankruptcy courts is thus "derivative" because it flows from the statutory grant of jurisdiction to the district courts. To summarize, this jurisdiction includes the power to adjudicate proceedings "arising in," "arising under," or "related to" a case under title 11.

FedPak, 80 F.3d at 213 (citations omitted). The District Court for the Northern District of Illinois has, pursuant to its Internal Operating Procedure 15(a), referred its section 1334(b) jurisdiction to the judges of this district.

This civil proceeding seeks a declaration of the state tax effects under section 346 of the Bankruptcy Code of a plan. As noted by the IDR, the power of a federal court to issue declaratory judgments on tax matters is limited. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a federal court is barred from issuing declaratory judgments concerning federal taxes and the Tax Injunction Act, 28 U.S.C. § 1341, provides that district courts cannot enjoin, suspend, or restrain the assessment, levy or collection of a state tax where there is a plain, speedy and efficient remedy in the state courts. There are, however, express exceptions to the limitation on a federal court's power to issue declaratory judgments concerning taxes. See 28 U.S.C. § 2201(a). For example, a bankruptcy court is empowered by section 505 of the Bankruptcy Code to "determine the amount or legality of any tax." 11 U.S.C. § 505; see generally, In re UAL Corp., 336 B.R. 370 (Bankr. N.D. Ill. 2006). In addition, section 1146(b) of the Bankruptcy Code authorizes the bankruptcy court to issue declaratory judgments concerning the state tax effects under section 346 of the Bankruptcy Code of

5

a plan. Specifically, section 1146(b) provides that,

> [t]he court may authorize the proponent of a plan to request a determination, limited to questions of law, by a State or local governmental unit charged with responsibility for collection or determination of a tax on or measured by income, of the tax effects, under section 346 of this title, and under the law imposing such tax, of the plan. In the event of an actual controversy, the court may declare such effects after the earlier of —
> (1) the date on which such governmental unit responds to the request under this subsection; or
>
> (2) 270 days after such request.

28 U.S.C. § 1146(b).

Although the statute is not expressly mentioned by Kmart in its Complaint, this proceeding is one brought pursuant to section 1146(b) of the Bankruptcy Code. Since the cause of action, *i.e.*, the declaratory judgment request, is created by section 1146(b) of the Bankruptcy Code and determined by that section and section 346 of the Bankruptcy Code, it is a proceeding "arising under" the Bankruptcy Code. *See* UAL, 336 B.R. at 371-72 (*citing* In re Wood, 825 F.2d 90, 96 (5th Cir. 1987)) ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11."). "Arising under" proceedings are core proceedings within the meaning of 28 U.S.C. § 157(b)(2), which according to that statute at least, bankruptcy judges may hear and determine and enter final judgments in at their conclusion. 28 U.S.C. § 157(b)(1); Stern v. Marshall, 131 S.Ct. 2594, 2605, 180 L.Ed.2d 475 (2011); Matter of United States Brass Corp., 110 F.3d 1261, 1268 (7th Cir. 1997), Barnett v. Stern, 909 F.2d 973, 981 (7th Cir. 1990).

The bankruptcy court is authorized to make a declaration pursuant to section 1146(b) only in the event of an actual controversy and after the earlier of the governmental unit's response to a

plan proponent's request for a determination of the tax effects of the plan or 270 days after the request was made to the governmental unit. Kmart's request to the IDR to determine the Plan's Illinois state tax effects was made approximately four years after confirmation of the Plan. The parties do not state when the IDR's determination was made. In any event, it is clear that Kmart's request for a declaration from this court was made at least 791 days after it requested a determination from the IDR[3] and about seven years after the Plan's confirmation.

Arguably, at the time it made the request to the IDR and filed the Complaint, Kmart was no longer a "plan proponent" within the meaning of section 1146(b) because the once proposed plan had long since been accepted and confirmed. This possibility raises significant jurisdictional concerns and this court is duty-bound to police its jurisdiction with meticulous care.[4] See Smoot v. Mazda Motors of America, Inc., 469 F.3d 675, 678 (7th Cir. 2006); Market Street Associates L.P. v. Frey, 941 F.2d 588, 590 (7th Cir. 1991). The need for meticulousness is especially heightened postconfirmation because bankruptcy subject matter jurisdiction following confirmation of a chapter 11 plan is "sharply reduced" and "limited." In re Spiers Graff Spiers, 190 B.R. 1001, 1007 (Bankr. N.D. Ill. 1996) (*citing* Pettibone Corp. v. Easley, 935 F.2d 120, 122 (7th Cir. 1991)); *see also* In re

---

[3] While the exact date of the request for determination is not provided by the parties, they stipulate the request occurred sometime in 2007. Assuming the request occurred on the last day of 2007, the interval between December 31, 2007 and the date of the filing of the complaint for declaratory relief, March 1, 2010, is 791 days.

[4] The parties have a concomitant obligation to assist the court in remaining within its constitutional and statutory boundaries. Micrometl Corp. v. Tranzact Technologies, Inc. 2011 WL 3773358, at * 4 (7th Cir. Aug. 24, 2011) ("[L]awyers who practice in federal court . . . 'have an obligation to assist the judges to keep within the boundaries fixed by Constitution and Congress.'"). Murray v. Conseco, Inc., 467 F.3d 602, 605 (7th Cir. 2006) ("[A] plaintiff . . . is duty-bound to inform the district court of jurisdictional problems.").

7

Schwinn Bicycle Co., 210 B.R. 747, 754-55 (Bankr. N.D. Ill. 1997). At this decidedly late stage, the court must prevent the parties from succumbing to the temptation "to assume that bankruptcy is forever and that the Code continues to regulate the conduct of former debtors." Grede v. Bank of New York Mellon, 598 F.3d 899, 902 (7th Cir. 2010).

Moreover, it appears based on the seemingly plain language of section 1146(b) that bankruptcy judges are only authorized to make preconfirmation declarations of the state tax effects of a proposed plan. Indeed, it has been observed based on its language that section 1146(b) is limited to requests for declaration of the future state tax consequences of a proposed plan, which necessarily means that the proceeding must be brought and resolved prior to confirmation. *See* In re Hartman Material Handling Systems, Inc., 141 B.R. 802, 813 n. 16 (Bankr. S.D.N.Y. 1992) (noting based on the statute's use of the words "*proponent* of the plan" that § 1146(d) [now (b)] "appears to contemplate only a pre-confirmation determination of tax liability"); *see also* UAL, 336 B.R. at 373 n. 3 ("Congress itself has expressly authorized declaratory judgments regarding the state and local tax consequences of a *proposed* Chapter 11 Plan.").

If the statute's language is ambiguous, its legislative history apparently indicates that Congress only intended to authorize bankruptcy courts to make preconfirmation declaratory judgments on the state tax effects of a plan. In UAL, Judge Wedoff in deciding whether he had jurisdiction to decide a motion for a determination of tax liability under section 505 of the Bankruptcy Code, quoted some of the legislative history of section 1146(b) [previously (d)]:

> As first considered by the House Judiciary Committee, § 1146(d) allowed for determination of federal as well as state and local tax consequences of Chapter 11 plans and was described in the Committee's report as follows:
>
> Section 1146(d) . . . is the procedural vehicle permitting an expedited declaration of

> a reorganization plan. In order to give taxing authorities a chance to dispose of the issues, the court may permit the plan's proponent to request a taxing authority to declare the tax effects of the plan. After the authority responds, or in any event after 270 days after such request, the court may bind the taxing authority by declaring the tax effects, in the event of an actual controversy. The provision is necessary to facilitate acceptance of plans and does not impose an unreasonable burden on Federal, State, or local taxing authorities. H.R.Rep. No. 95-595, at 284 (1977), U.S. Code Cong. & Admin. News 1978, pp., 5963, 6241.

Id. at 378.

Further, the House Report for the Reform Act of 1978 states,

> Subsection (d) permits the court to authorize the proponent of a plan to request a taxing authority to declare the tax effects of such plan. In the event of an actual controversy, the court may declare the tax effects of the plan of reorganization at any time after the earlier of action by such taxing authority or 270 days after the request. Such a declaration, unless appealed, becomes a final judgment and binds any tax authority that was requested by the proponent to determine the tax effects of the plan.

H.R.Rep. No. 595, 95th Cong., at 421-422 (1st Sess. 1977).

The Senate Report is even clearer and consistent with the House Report, at least on the timing of the bankruptcy court's declaration. It states,

> Subsection (d) permits the court to authorize the proponent of a reorganization plan to request from the Internal Revenue Service (or State or local tax authority) an *advance ruling on the tax effects of the proposed plan.* If a ruling is not obtained within 270 days after the request was made, or if a ruling is obtained but the *proponent of the plan* disagrees with the ruling, the bankruptcy court may resolve the dispute and determine the tax effects of the *proposed plan.*

S.Rep. No. 989, 95th Cong., at 132-133 (2d Sess. 1978) (emphasis added).

Based on the legislative history of section 1146(b), the authority given the bankruptcy court, at least under that statute, to declare the state and local tax effects appears limited to proposed plans prior to confirmation. Clearly, section 1146(b) is a mechanism for the plan proponent to propose a plan whose state and local tax effects are agreed on between the plan proponent and the taxing

9

authority or, in the absence of such an agreement, declared by the bankruptcy court prior to confirmation. The mechanism allows for the plan proponent to know the tax effects to which it may be bound after confirmation. If the proponent is content with the determination or declaration, it can proceed to confirmation. If not content, the proponent may want to propose a different plan.

The observation that section 1146(b) only contemplates preconfirmation declarations of tax effects appears correct even though section 1146(b) is placed in Subchapter III of the Bankruptcy Code entitled "Postconfirmation Matters." A subchapter heading does not substitute for the text of the statute, but is among the tools available for resolution of doubt. Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47, 128 S.Ct. 2326 (2008). In Piccadilly, the Court reasoned that the placement of section 1146(a) in the subchapter entitled "Postconfirmation Matters" resolved doubts as to the meaning of the phrase "under a plan confirmed" in that subsection. Id. Unlike the legislative history for subsection (a) of section 1146, however, the legislative history for subsection (b) goes a long way to resolve doubts, if any, as to that subsection's meaning. As such, resorting to the subchapter heading tool is probably unnecessary, and if not, the significance of its placement in the subchapter pales next to the clear statements in the Congressional record. Indeed, it can be said that section 1146(b)'s placement under that subchapter heading "Postconfirmation Matters" makes sense because it does in some way concern postconfirmation matters. Specifically, although the court's declaration of the tax effects must be made prior to confirmation, the declaration will bind the taxing authority and others after confirmation of that plan.

Here, Kmart's request for a determination by the IDR of the state tax effects and Kmart's filing of the complaint seeking a declaration of the effects both occurred years after confirmation of the Plan. As discussed, section 1146(b) does not appear to authorize postconfirmation declaratory

10

judgments from this court of that nature. There apparently being no other Bankruptcy Code section authorizing this court to issue postconfirmation declaratory relief of the state tax effects of a confirmed plan, the court is likely not statutorily authorized to make such a declaration. Consequently, there would be no "arising under" jurisdiction. Moreover, Kmart, who has the burden, has not adequately shown some other possible source of jurisdiction. *See* NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 237 (7th Cir. 1995) (the party seeking to invoke subject matter jurisdiction bears the burden of proving it by "competent proof."). *See also* In re Shuman, 277 B.R. 638, 645 (Bankr. E.D. Pa. 2001) (the same burden applies in bankruptcy).

In light of the foregoing, the court is inclined to dismiss this action pursuant to Fed. R. Civ. P. 12(h)(3), made applicable herein by Fed. R. Bank. P. 7012(b). However, a dismissal for lack of subject matter jurisdiction without notice or opportunity to be heard, although permissible, is hazardous and the court must therefore exercise caution. Joyce v. Joyce, 975 F.2d 379, 386 (7th Cir. 1992). Such need for caution is particularly true here where there is a substantial amount at stake and the dispute presents a substantive issue concerning section 346 that apparently no court has previously addressed. Accordingly, the court will schedule a status hearing to address how the parties wish to proceed to address the issue of jurisdiction.

Dated: OCT 13 2011

Enter:

Susan Pierson Sonderby
United States Bankruptcy Judge