## United Stated Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Susan Pierson Sonderby | Case No. | 02 B 02474 |
|---|---|---|---|
| DATE | May 15, 2012 | ADVERSARY NO. | 10 A 00293 |
| CASE TITLE | Kmart Corporation; Kmart Corporation v. Illinois Department of Revenue | | |
| TITLE OF ORDER | Memorandum Decision | | |

### DOCKET ENTRY TEXT

For the reasons stated herein, the court will enter an order dismissing the adversary proceeding for lack of subject matter jurisdiction. The cross-motions for summary judgment will be denied by separate minute orders as moot.
[For further details see text below.]

### STATEMENT

This cause comes to be heard on the cross-motions for summary judgment filed by the plaintiff, Kmart Corporation ("Kmart") and the defendant, the Illinois Department of Revenue ("IDR") with respect to Kmart's adversary complaint seeking a declaration of the effects under section 346 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") of Kmart's plan of reorganization on its Illinois state income tax liability. The parties agree that the version of section 346 in existence prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 ("BAPCPA") applies to this proceeding.

## STATEMENT

### Background

The facts are undisputed. Kmart and 37 affiliates filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code on January 22, 2002. On April 22, 2003, this court entered an order confirming the First Amended Joint Plan of Reorganization of Kmart Corporation and its Affiliated Debtors and Debtors-in-Possession, as Modified (the "Plan"), which became effective on May 6, 2003 (the "Confirmation Order").

Both prior to and during bankruptcy, Kmart suffered substantial operating losses which accumulated for federal and Illinois tax purposes and are referred to as "net operating losses" ("NOLs"). Prior to adjustments pursuant to section 346 of the Bankruptcy Code Kmart had a certain amount of NOLs available to be carried forward in order to be applied to positive income during profitable years.

By virtue of the entry of the Confirmation Order, Kmart was discharged of certain debt. For federal income tax purposes, Kmart reduced its federal tax attributes and basis in property to reflect the full discharged amount. Some of the total debt discharged represented the principal amount of borrowed funds evidenced by promissory notes (the "Borrowed Debt"), for which Kmart did not claim a deduction on its Illinois or federal income tax returns. Claims based on the Borrowed Debt were placed in Class 4 of the Plan. The holders of allowed Class 4 claims received common shares in the reorganized Kmart in satisfaction of their Borrowed Debt claims.

Kmart has a claim against the IDR for a refund of prepetition income taxes. Kmart and the IDR have reached a consensus on the amount of the refund but cannot agree on the proper application of the stock for debt treatment in Class 4 to the NOLs that may be applied to income. Specifically, they disagree on whether the governing version of section 346 of the Bankruptcy Code requires that cancelled Borrowed Debt be excluded from total cancelled debt that is applied to reduce NOLs. Kmart contends that the cancelled Borrowed Debt should not be included in the cancelled debt that reduces its NOLs. If Kmart is correct, more of the NOLs can be used to reduce its income tax liability to Illinois. In its cross-motion for summary judgment, the IDR asserts the opposite: the cancelled Borrowed Debt should be included in the cancelled debt that reduces the NOLs. If the IDR is correct, the amount of the NOLs is smaller and consequently Kmart's income tax liability is greater.

Kmart contends that its position is mandated by the plain language of section 346. The IDR argues that the statute's language is not plain, and even if it were, the statute should not be enforced because to do so would lead to an absurd result.

Since at least 2007, Kmart and the IDR have engaged in a series of negotiations to resolve this and other tax issues between them. As part of these discussions, Kmart requested IDR's concurrence in its accounting method based on its interpretation of section 346 of the Bankruptcy

## STATEMENT

Code for the cancellation of Borrowed Debt upon confirmation of the Plan. The IDR has not agreed, giving rise to an actual controversy.

On March 1, 2010, Kmart filed an adversary complaint seeking to resolve the controversy with this court's entry of a judgment declaring that Kmart's method of accounting for cancellation of debt income for Illinois income tax purposes is appropriate under the provisions of section 346 of the Bankruptcy Code (the "Complaint"). In its summary judgment motion, Kmart seeks a declaration as a matter of law that section 346 does not require it to reduce its NOLs by the amount of the Borrowed Debt settled under the Plan. The IDR filed a cross-motion for summary judgment arguing otherwise. In other words, Kmart is arguing with the IDR about the income tax effects under section 346 of the Code and under the applicable provisions of Illinois' tax code of the Plan. They have reached an impasse and Kmart now asks this court to declare such tax effects.

Kmart's request for declaratory relief was made more than seven years after confirmation of the Plan. Requests for post-confirmation relief often raise jurisdictional concerns because at that point the debtor is out from under the tutelage of the bankruptcy court. See Pettibone Corp. v. Easley, 935 F.2d 120, 122 (7th Cir. 1991). Indeed, once the plan is confirmed, the debtor goes on its way to "compete in the commercial world" and deal with its tax liabilities. In re Maley, 152 B.R. 789, 791-92 (Bankr. W.D.N.Y. 1992).

This court raised the jurisdictional concerns and asked the parties to brief the issue. See In re Kmart Corp., 2011 WL 4899937 (Bankr. N.D. Ill. Oct. 13, 2011). Both sides filed top-notch briefs which the court has considered. For the reasons that follow, the court concludes that it does not have subject matter jurisdiction over this proceeding, so the same will be dismissed pursuant to Fed. R. Civ. P. 12(h)(3), made applicable herein by Fed. R. Bank. P. 7012(b).

**Jurisdiction**

As noted, the Complaint seeks declaratory relief. "[C]ourts of bankruptcy, like any other courts, . . . have no power to afford declaratory relief unless affirmatively authorized to do so by some statutory provision." In re Dycoal, Inc., 327 B.R. 220, 226 (Bankr. W.D. Pa. 2005)(*quoting* In re Becker's Motor Transportation, Inc., 632 F.2d 242, 247 (3d Cir. 1980)). Pursuant to section 2201(a) of title 28 of the United States Code (the "Declaratory Judgment Act"), federal courts are empowered to declare the rights of an interested party, provided the matter is one "of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a).

Congress created the remedy of declaratory relief in federal courts when it enacted the Declaratory Judgment Act. Public Service Commission of Utah v. Wycoff Co., Inc., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). The remedy is expressly unavailable with respect to controversies about federal taxes. Id. That federal tax exception has its own exceptions, however. Namely, the federal court is permitted to entertain proceedings dealing with the federal tax exempt

STATEMENT

status of organizations, proceedings under sections 505 or 1146 of the Bankruptcy Code, and proceedings dealing with certain antidumping regulations. Id.; see also In re UAL Corp., 336 B.R. 370, 373-74 (Bankr. N.D. Ill. 2006).[1]

Here, the adversary proceeding involves section 1146 of the Bankruptcy Code, which provides,

> [t]he court may authorize the proponent of a plan to request a determination, limited to questions of law, by a State or local governmental unit charged with responsibility for collection or determination of a tax on or measured by income, of the tax effects, under section 346 of this title, and under the law imposing such tax, of the plan. In the event of an actual controversy, the court may declare such effects after the earlier of —
>
> (1) the date on which such governmental unit responds to the request under this subsection;
>
> or
>
> (2) 270 days after such request.

11 U.S.C. § 1146(b).

The relief that Kmart seeks in this proceeding is within the bounds of the Declaratory Judgment Act, provided there is an actual controversy and this court has jurisdiction over the proceeding. There clearly is an actual controversy concerning questions of law about the effects under section 346 of the Bankruptcy Code and Illinois income tax law of the Plan on the income taxes owing by Kmart to the State of Illinois.

The next more difficult question is whether this court has subject matter jurisdiction over the proceeding involving the actual controversy so it may exercise the power given it under the Declaratory Judgment Act. For the reasons that follow, the court holds that it does not have subject matter jurisdiction over this proceeding. Therefore, this court cannot render a declaratory judgment to resolve the proceeding and the same must be dismissed.

To reach its conclusion, the court begins with the meaning of subject matter jurisdiction and the source and scope of a bankruptcy court's subject matter jurisdiction. Subject matter jurisdiction

---

[1] Judge Wedoff observed that the inclusion of section 1146(b) as an exception to the Declaratory Judgment Act was curious, because that exception "never has effect, since § 1146 applies only to state and local tax matters." Id. at 373.

-4-

## STATEMENT

is generally defined as "the court's authority to hear a given type of case." U.S. v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984). "The jurisdiction of bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995).

Section 1334(b) of title 28 of the United States Code is the statutory source of bankruptcy jurisdiction over civil proceedings. Id. That statute gives district courts original, but not exclusive, jurisdiction of all civil proceedings arising under title 11 (i.e., the Bankruptcy Code), or arising in or related to cases under title 11. Id. District Courts may refer such proceedings to bankruptcy judges. 28 U.S.C. § 157(a). The District Court for the Northern District of Illinois via its Internal Operating Procedure 15(a) has made such a reference.

A proceeding "arises under" the Bankruptcy Code if it involves an action created or determined by the Bankruptcy Code. UAL, 336 B.R. at 371-72 (*citations omitted*). Proceedings "arising in" a bankruptcy case are "generally defined as 'administrative matters that arise *only* in bankruptcy cases.'" In re Ortiz, 665 F3d. 906, 911 (7th Cir. 2011) (*quoting* In re Repository Techs., Inc., 601 F.3d 710, 719 (7th Cir. 2010))(emphasis in original)). A proceeding is "related to" a bankruptcy case if even though it can exist outside of bankruptcy, it "affects the amount of property available for distribution or the allocation of property among creditors." Matter of Xonics, Inc., 813 F.2d 127, 131 (7th Cir. 1987).

In this matter, the court can quickly dispense with the "related to" jurisdiction option. As both parties acknowledge, this proceeding is not within the court's "related to" jurisdiction. The resolution of this dispute will have no direct appreciable impact on the distribution to creditors of the Kmart estate or the allocation of estate property among them. The only impact will be on the amount of the reorganized Kmart's current income tax liability to the State of Illinois.

That leaves the possibilities of "arising under" or "arising in" jurisdiction. The IDR posits that this court only has "arising under" jurisdiction because the ability of Kmart to seek the declaratory relief it wants is created or determined by section 1146(b) the Bankruptcy Code. If the proceeding cannot be pursued under that section, there is no other source of "arising under" or "arising in" jurisdiction. In other words, as the IDR succinctly put it at a status hearing on this matter, jurisdiction "sinks or swims" with section 1146(b). And (as acknowledged by the IDR), if sunk, the parties will be left to raise the dispute in another court of competent jurisdiction.

In its jurisdiction brief, Kmart contends that section 1146(b) is not the only Bankruptcy Code section determining the claim brought in the proceeding. Kmart argues that the proceeding involves the proper application of Kmart's NOLs on income pursuant to the operation of section 346. Because section 346 is involved, the proceeding is "indisputably a matter 'arising under' the Bankruptcy Code." That argument, however, ignores the roadmap laid out by Congress for a plan proponent to obtain a declaration from the bankruptcy court of the state tax effects under section 346 of its proposed plan.

## STATEMENT

Section 1146(b) was enacted to allow the bankruptcy court to declare the state tax effects of a plan under section 346 of the Bankruptcy Code and to provide the framework under which such analysis is completed. Section 1146(b) is therefore the statutory avenue permitting a review of the effect under section 346 of a plan on a debtor's state income tax liability. The Supreme Court instructs that "[w]hen a statute limits a thing to be done in particular mode, it includes the negative of any other mode." Dersch Energies, Inc. v. Shell Oil Co., 314 F.3d 846, 856 (7th Cir. 2002)(*quoting* Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19-20, 100 S.Ct. 242, 62 L.Ed. 146 (1979)). In other words, this court is limited to using the procedure, or taking the statutory avenue, mapped out by Congress. Here, the court is unable to issue declaratory relief concerning the state tax effects of a plan under section 346 without using section 1146(b).[2]

Indeed, to take a different avenue outside of section 1146(b) to examine the effects of section 346 on state income tax liability would render section 1146(b) superfluous. Kmart assures the court, however, that section 1146(b) would not be rendered superfluous if the court were to enter declaratory relief involving section 346 under its general bankruptcy jurisdiction. And, since the determination would be under section 346, this court has "arising under" jurisdiction, which remains intact after confirmation. The court disagrees. Ignoring section 1146(b) offends the well-settled principle of statutory interpretation that all parts of a statute, here the Bankruptcy Code, if at all possible, should be given effect. Jarecki v. G.D. Searle & Co., 367 U.S. 303, 308, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961)(a statute should not be interpreted so as to render one part inoperative, superfluous or insignificant). In this regard, the Seventh Circuit explains:

> In general, canons of statutory construction urge courts to interpret statutes in ways that make every part of the statute meaningful. Interpretations that result in provisions being superfluous are highly disfavored. Further, when deciding between competing understandings of a statute, courts often consider the objectives of the larger statutory scheme and select the meaning that produces a substantive effect that is compatible with the rest of the law.

River Road Hotel Partners, LLC v. Amalgamated Bank, 651 F.3d 642, 651 (7th Cir. 2011)(*citations omitted*)

---

[2] The Supreme Court recently issued an opinion that addressed the provisions of section 346 in some depth without mentioning section 1146(b). *See* Hall v. U.S., 566 U.S. ___ 2012 (slip op.) That case, however, did not involve a post-confirmation, post-closing request for declaratory relief resolving a controversy about a legal issue relating to the state tax effects under section 346 of the Code and a state income tax law, of an already confirmed plan. Rather, it involved the Internal Revenue Service's objection to the treatment of federal income taxes on the capital gains from a farm sale as unsecured nonpriority claims in a proposed chapter 12 plan. The resolution of the objection "turn[ed] on the meaning of the phrase in § 503(b) of the Bankruptcy Code: 'incurred by the estate.'" Id. (slip op., at 4) The Court concluded from its reading of section 503 that those taxes were not incurred by the estate. The Court drew "support from" section 346 for its reading of section 503(b). Id. (slip op. at 6).

## STATEMENT

In short, the court sees no way around section 1146(b). The court thus agrees with the IDR's position that the only possible source of jurisdiction over the proceeding is "arising under" jurisdiction, and section 1146(b) of the Bankruptcy Code informs that type of jurisdiction. Consequently, the intended breadth of section 1146(b) must be examined to determine whether this proceeding is properly brought pursuant to it.

By its terms, the bankruptcy court is authorized to make a declaration pursuant to section 1146(b) only in the event of an actual controversy and after the earlier of the governmental unit's response to a plan proponent's request for a determination of the tax effects of a plan under section 346 or 270 days after the request was made to the governmental unit. Kmart's request to the IDR to determine the Plan's Illinois state tax effects was made approximately four years after confirmation of the Plan. The parties do not state when the IDR's response was made. In any event, it is clear that Kmart's request for a declaration from this court was made at least 791 days after it requested a determination from the IDR[3] and about seven years after the Plan's confirmation.

At the time it made the request to the IDR and filed the Complaint, Kmart was no longer "a plan proponent" because the once proposed plan had long since been accepted and confirmed. This is a problem for Kmart obtaining relief from this court for two reasons. First, where a statute names the parties granted the right to invoke its provisions, such parties only may act. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6-7, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). When Kmart filed the Complaint it was not the proper party to invoke the remedy afforded by section 1146(b).

Second, the precise language of the statute "the proponent of a plan," denotes not only who may bring the requested relief but also implies a temporal limitation on the permission given to the court to declare state tax effects of a plan. Indeed, based on the language of section 1146(b) that bankruptcy judges are only authorized to make preconfirmation declarations of the state tax effects of a proposed plan. Although so far it appears that no other court has come to that conclusion, it has been observed *in dicta* based on its language that section 1146(b) is limited to requests for declaration of the future state tax consequences of a proposed plan, which necessarily means that the proceeding must be brought and resolved prior to confirmation. See In re Hartman Material Handling Systems, Inc., 141 B.R. 802, 813 n. 16 (Bankr. S.D.N.Y. 1992) (noting based on the statute's use of the words "*proponent* of a plan" that § 1146(d) [now (b)] "appears to contemplate only a pre-confirmation determination of tax liability"); *see also* UAL, 336 B.R. at 373 n. 3 ("Congress itself has expressly authorized declaratory judgments regarding the state and local tax consequences of a *proposed* Chapter 11 Plan.").

---

[3] While the exact date of the request for determination is not provided by the parties, they stipulate the request occurred sometime in 2007. Assuming the request occurred on the last day of 2007, the interval between December 31, 2007 and the date of the filing of the complaint for declaratory relief, March 1, 2010, is 791 days.

## STATEMENT

If the language of section 1146(b) is considered ambiguous the court can utilize a number of tools of construction to glean congressional intent. Employing those tools here leads to the same result. First, a review of legislative history supports the observation that section 1146(b) was intended to empower bankruptcy courts to make pre-confirmation declarations of the state tax effects under section 346 of a proposed plan.

The House Report for the Reform Act of 1978 states, with respect to section 1146,

> Subsection (d) [which is identical with current subsection (b)] permits the court to authorize the proponent of a plan to request a taxing authority to declare the tax effects of such plan. In the event of an actual controversy, the court may declare the tax effects of the plan of reorganization at any time after the earlier of action by such taxing authority or 270 days after the request. Such a declaration, unless appealed, becomes a final judgment and binds any tax authority that was requested by the proponent to determine the tax effects of the plan.

H.R. Rep. No. 595, 95th Cong., at 421-422 (1st Sess 1977).

The Senate Report is consistent with the House Report, at least on the timing of the bankruptcy court's declaration. It states,

> Subsection (d) permits the court to authorize the proponent of a reorganization plan to request from the Internal Revenue Service (or State or local tax authority) an *advance ruling on the tax effects of the proposed plan*. If a ruling is not obtained within 270 days after the request was made, or if a ruling is obtained but the *proponent of the plan* disagrees with the ruling, the bankruptcy court may resolve the dispute and determine the tax effects of the *proposed plan*.

S. Rep. No. 989, 95th Cong., at 133 (2d Sess. 1978) (emphasis added).

The congressional record statements explain that section 1146 of the House amendment represented a compromise between the House bill and the Senate amendment. The House amendment retained only the state and local rules, meaning the court could not declare the federal tax effects of a plan under § 1146. Further, "[u]nder the House amendment, the power of the bankruptcy court to declare the tax effects of the plan is limited to issues of law and not to questions of fact such as the allowance of specific deductions. Thus, the bankruptcy court could declare whether the reorganization qualified for tax-free status under State or local tax rules, but it could not declare the dollar amount of any tax attributes that survive the reorganization." 124 Cong. Rec. H11115 (daily ed. Sept. 28, 1978) (Statement of Rep. Edwards); S17432 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini.).

Based on the legislative history, this court's power to declare the resolution of legal issues of state and local tax effects under section 346 is limited to proposed plans prior to confirmation.

## STATEMENT

The court will not interpret section 1146(b) to expand that empowerment. *See* Jarecki, 367 U.S. at 307 (courts are cautioned to avoid an interpretation that gives unintended breadth to acts of Congress). Section 1146(b) is a mechanism for the plan proponent to propose a plan whose state and local tax effects are either agreed on between the proponent and the taxing authority or, in the absence of such an agreement, declared by the bankruptcy court prior to confirmation. The mechanism allows for the constituents to know and accept the tax effects to which they will bound post confirmation.

One may ask why section 1146(b) is included in a subchapter of the Bankruptcy Code labeled "Postconfirmation Matters." The answer is twofold. First, a subchapter heading does not substitute for the text of the statute, but is among the tools available for resolution of doubt. Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008). In Piccadilly, the court credited the placement of section 1146(a) in the subchapter "Post Confirmation Matters," to clear up doubts as to the meaning of the phrase "under a plan confirmed" in that subsection. Id. Unlike the legislative history for subsection (a) of section 1146, however, the legislative history for subsection (b), to the extent it needs to be resorted to, resolves doubts as to the statute's meaning. As such, resorting to the subchapter heading tool is unnecessary. Section 1146(b) does in some sense concern postconfirmation matters. Specifically, although the court's declaration of the tax effects must be made prior to confirmation, it will bind the reorganized debtor, taxing authority and others after confirmation of the plan.

Finally, the conclusion that section 1146(b) allows only pre-confirmation declarations is further supported by the rule of statutory construction that requires statutes be "construed in connection with every other part or section so as to produce a harmonious whole." Dersch Energies, 314 F.3d at 856. That rule is based on the fact that statutes "are passed as a whole and not in parts or sections and is animated by one general purpose and intent." Id.; *see also* River Road Hotel, 651 F.3d at 642 ("Further, when deciding between competing understandings of a statute, courts often consider the objectives of the larger statutory scheme and select the meaning that "produces a substantive effect that is compatible with the rest of the law.") Here, one purpose of the enactment of the Bankruptcy Code is to deal expeditiously and efficiently with a bankrupt debtor's estate. In re Cary Metal Products, Inc., 152 B.R. 927, 932 (Bankr. N.D. Ill. 1993). To construe section 1146(b) in a way that allows post-confirmation determinations by bankruptcy judges of the reorganized debtor's tax liability long after the estate has been wound up is incompatible to that purpose.

## STATEMENT

In summary, the court concludes that declarations of the effect under section 346 of the Bankruptcy Code of a plan on the debtor's state income tax liability can only be sought via section 1146(b) and are limited to the pre-confirmation time period at the request of a plan proponent. Because this proceeding was commenced after the confirmation of the plan, this court does not have jurisdiction and therefore cannot make such a declaration. There being no other source of bankruptcy jurisdiction, the court will enter an order dismissing the adversary proceeding for lack of subject matter jurisdiction. The cross-motions for summary judgment will be denied as moot.

ENTER:

_____
Hon. Susan Pierson Sonderby
United States Bankruptcy Judge